UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JUAN REYES-CASTILLO,

    Plaintiff,

UNITEDHEALTHCARE INSURANCE COMPANY,

    Involuntary Plaintiff,

v.                                             Case No. 22-cv-1320-bhl

JOHN WHITE, BRANDON PIPP,
ANDREW STOCKLAND and CITY OF BROOKFIELD,

    Defendants.

## ORDER PARTIALLY GRANTING SUMMARY JUDGMENT

      In the fall of 2019, Plaintiff Juan Reyes-Castillo was arrested for violating a restraining order after he sent his Netflix password to his ex-girlfriend in hopes it would end up with his daughter. During his arrest, he told Defendant Officers John White, Brandon Pipp, and Andrew Stockland that he had recently undergone surgery on his left shoulder and asked to be handcuffed with his hands in front of his body. Officer Pipp informed Reyes-Castillo that department policy prohibited him from granting the accommodation but, after checking Reyes-Castillo's range of motion, agreed to handcuff him more generously by using three sets of handcuffs linked together behind his back. Although Reyes-Castillo did not initially complain of pain, as he walked to the squad car, he indicated that his shoulder was hurting due to his prior surgery and then repeatedly asked to be cuffed in the front. The Officers refused his requests, reiterating that City of Brookfield policy prohibited them from complying.

      After the incident, Reyes-Castillo underwent shoulder replacement surgery. He contends that this surgery was necessitated by the handcuffing and claims that the Defendant Officers are liable to him under 42 U.S.C. § 1983 for using excessive force, in violation of his Fourth Amendment rights. He also seeks to hold the City of Brookfield liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), contending that his injuries are the result of an

unconstitutional City practice or policy that violated his Fourth Amendment rights. Defendants have moved for summary judgment and briefing on the motion is now completed. For the reasons given below, Defendants' motion for summary judgment will be granted as to the Defendant Officers but denied as to the claim against the City.

## BACKGROUND[1]

Reyes-Castillo is a resident of Milwaukee, Wisconsin. (ECF No. 41 ¶1.) In February 2019, Reyes-Castillo suffered a rotator cuff tear to his left shoulder. (ECF No. 1 ¶10.) He received surgery repairing the injury in April 2019, and underwent further reconstruction on September 13, 2019. (*Id.*)

Just two months later, on November 13, 2019, Defendant Officers White, Pipp, and Stockland were dispatched to Reyes-Castillo's home in response to an alleged violation of a restraining order which prohibited him from contacting his ex-girlfriend. (ECF No. 41 ¶¶53–60.) The Defendant Officers had received a report that Reyes-Castillo had reached out to his ex-girlfriend via a third-party to give his daughter the password to his Netflix account. (*Id.* ¶¶55–58; ECF No. 43 ¶5.) Upon the Defendant Officers' arrival at the home, Reyes-Castillo's brother answered the door and retrieved Reyes-Castillo. (ECF No. 41 ¶¶63–64.) Reyes-Castillo approached the door with a noticeable limp, informed the Defendant Officers that he had just had surgery, and invited them inside. (*Id.* ¶64.) Reyes-Castillo admitted to sending the text to his ex-girlfriend, and the Defendant Officers proceeded to arrest him. (*Id.* ¶¶69, 76.) Reyes-Castillo did not resist the arrest. (ECF No. 43 ¶31.)

While Reyes-Castillo did not physically resist, he verbally objected to the way he was being detained. In particular, he complained that he had a bad shoulder, after which the officers assured him that they would be gentle. (ECF No. 29-9 at 4:28.) Officer Pipp informed Reyes-Castillo that three handcuffs would be used to avoid further aggravation, to which Reyes-Castillo responded, "I can't, I can't." (*Id.* at 4:35.) Officer Pipp asked how far back Reyes-Castillo could comfortably move his arms, then proceeded to cuff him with the three sets of handcuffs linked together. (*Id.* at

---

[1] This background is derived primarily from the parties' Proposed Findings of Facts. (ECF Nos. 28, 43). Certain background facts about Reyes-Castillo's prior injuries are taken from the Complaint. (ECF No. 1.) All disputes of fact are viewed in the light most favorable to Reyes-Castillo. *See EEOC. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). However, the details of the arrest are cited directly to the body camera footage, (ECF No. 29-9), as permitted by Seventh Circuit precedent. *See Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 985 (7th Cir. 2021) (holding that video evidence may be considered at summary judgment phase without favoring the non-movant's version of the facts).

4:35–5:00.) No alternative ways to handcuff Reyes-Castillo were considered by Officer Pipp. (ECF No. 43 ¶36.) Reyes-Castillo did not initially complain of any pain after being handcuffed. (ECF No. 29-9 at 4:35–6:40.)

Reyes-Castillo was led out of his house, down the front steps, and onto the sidewalk. (ECF No. 41 ¶¶87–88, 91.) Officers Pipp and White searched Reyes-Castillo before he got in the car, (*id.* ¶91), and at some point, during the search or right after it, Reyes-Castillo exclaimed, "Watch my shoulder! I've just had two surgeries on that shoulder. I just told you that, not even ten minutes ago." (ECF No. 29-9 at 7:39–46.) Reyes-Castillo again requested that the handcuffs be in the front for fear of hurting his shoulder, but the Defendant Officers refused, maintaining that it was the City of Brookfield's policy to cuff in the back. (*Id.* at 7:50–59.) Officer Pipp suggested Reyes-Castillo move his good arm back further to relieve the pressure off his bad one, and Reyes-Castillo replied that his shoulder would still hurt. (*Id.* at 8:00-10.) Before getting in the vehicle, Reyes-Castillo again requested the handcuffs be moved to the front due to the pain he was feeling, to which Officer Pipp responded, "Dude, it's our policy, man. I can't. If my Lieutenant saw that I had you in the front, I'd have an ass chewing, and I'm not doing that today." (*Id.* at 8:45–59.) Reyes-Castillo again explained that he had recently had surgery, Officer Pipp again suggested moving his good arm back, and Reyes-Castillo again said he was still in pain. (*Id.* at 9:00–9:20.) Reyes-Castillo entered the squad car, and the handcuffs were removed some time after Reyes-Castillo's arrival at the Waukesha County Jail. (ECF No. 41 ¶¶102, 109.)

The City of Brookfield trains its officers to use additional handcuffs when an arrestee has a limited range of motion. (*Id.* ¶19.) It claims to follow the Student Training Guide of the State of Wisconsin's Defensive and Arrest Tactics Program (DAAT Manual) for its guidance on handcuffing. (*Id.* ¶23.) The DAAT Manual provides that arrestees should be handcuffed behind the back unless there is a clear medical reason not to do so. (*Id.* ¶25.) Despite the express caveat in the DAAT Manual, Officer Stockland testified at his deposition that officers are trained to handcuff behind the back, without exception, even if there are specific complaints of pain. (ECF No. 43 ¶¶69, 71.) Officer Pipp also testified that he never received training for accommodating physical injuries during handcuffing. (*Id.* ¶75.) Supervising Sergeant Brian Grochloski testified at his deposition that Brookfield police officers have no discretion in whether to restrain an arrestee, and supervising Sergeant Jesse Morales testified he was unaware of any training, policies,

or procedures at Brookfield regarding accommodations for individuals who cannot be handcuffed behind their backs. (*Id.* ¶¶77, 81.)

On November 15, 2019, Reyes-Castillo visited his physical therapist, and reported that his shoulder was "twisted up bad" from being "roughly" handcuffed. (ECF No. 41 ¶112.) A few months later, on February 26, 2020, Reyes-Castillo underwent shoulder replacement surgery; he attributes the need for this surgery to the way he was handcuffed.[2] (*Id.* ¶¶121, 123.)

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To survive a properly supported summary judgment motion, the opposing party must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## ANALYSIS

Reyes-Castillo asserts Fourth Amendment excessive-force claims against the Defendant Officers. (ECF No. 1 ¶¶42–56.) He also asserts a *Monell* claim against the City of Brookfield. (*Id.* ¶¶57–62.) Defendants have moved for summary judgment on all claims, insisting that Reyes-Castillo has failed to come forward with evidence that his constitutional rights were violated. (ECF

---

[2] Reyes-Castillo initially alleged that the Defendant Officers' treatment during his arrest also resulted in a knee injury. (ECF No. 1 ¶¶10, 39.) Though Defendants addressed this allegation in their motion for summary judgment, (ECF No. 27 at 5), Reyes-Castillo has since dropped this claim, (ECF No. 34 at 2 n.1).

No. 27 at 3–4.) The Defendant Officers also argue that, even if their actions violated Reyes-Castillo's rights, they are entitled to qualified immunity. (*Id.* at 11–13.) Finally, the City contends that Reyes-Castillo lacks evidence sufficient to support *Monell* liability. (*Id.* at 15–18.) As explained below, the summary judgment record contains enough evidence for a jury to reasonably find that Defendants' violated Reyes-Castillo's constitutional rights and that the violation was the result of an unconstitutional City policy or practice under *Monell*. But the record also confirms that the Defendant Officers are entitled to qualified immunity.[3] Accordingly, Defendants' motion for summary judgment will be granted in part and denied in part.

I. **Defendants Are Not Entitled to Summary Judgment on Reyes-Castillo's Excessive-Force Claim.**

Reyes-Castillo claims that Defendants violated his Fourth Amendment rights by using excessive force when the Defendant Officers handcuffed him behind his back without regard to his previously injured shoulder. An excessive force claim is highly fact dependent. *See Stainback v. Dixon*, 569 F.3d 767, 771–72 (7th Cir. 2009). To establish liability, a plaintiff must prove that the force employed was objectively unreasonable. *Howell v. Smith*, 853 F.3d 892, 897–98 (7th Cir. 2017). The reasonableness inquiry is based on "the totality of the circumstances," and requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citing *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003); *Stainback*, 569 F.3d at 772. Among the relevant factors are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861–62 (7th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts must also account for officers' "need to make split-second judgments based on rapidly developing events." *Stainback*, 569 F.3d at 772 (citing *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 685 (7th Cir. 2007)). An officer's actions are evaluated from the perspective of a reasonable officer on the scene, and not with the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Where a person has "at most, committed a misdemeanor offense" and was "not exhibiting violent behavior," an officer's use of force that

---

[3] The parties also argue whether punitive damages against the Defendant Officers are appropriate. (ECF No. 27 at 14–15; ECF No. 34 at 20–21.) Given that the Defendant Officers are entitled to qualified immunity, and that punitive damages are not allowed under a *Monell* liability theory, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), the Court need not address that issue.

might otherwise be appropriate may still be unconstitutionally excessive. *See Cyrus*, 624 F.3d at 863.

Defendants maintain that the undisputed facts show that the Defendant Officers did not use excessive force. They point out that Officer Pipp checked Reyes-Castillo's range of motion and appropriately linked together three sets of handcuffs to accommodate his shoulder injury. (ECF No. 27 at 8.) Defendants further contend that "[t]here was no need to modify the placement of the handcuffs because the handcuffs were not causing Reyes-Castillo any harm." (*Id.* at 9–10.) They insist that the Defendant Officers had no knowledge that Reyes-Castillo was actually in pain and maintain that his objections were to what *might* happen, not that he was in pain at the moment of the cuffing. (ECF No. 42 at 4–5.) And they maintain that, even if the officers had known of Reyes-Castillo's pain, it would merely be a consideration, not a determinative factor, in their decision to handcuff him in the back. (*Id.* at 4.)

Reyes-Castillo points to evidence showing that while he tried to work within the accommodation, the Defendant Officers' insistence on handcuffing him behind his back still caused him significant pain and he repeatedly told the officers of his pain and provided them details about his pre-existing condition. (ECF No. 34 at 16.) A video of the arrest confirms that Reyes-Castillo informed the Defendant Officers of his shoulder injury and repeatedly asked to be handcuffed in the front due to the pain he was feeling and his fear of reaggravating his pre-existing injury. (ECF No. 29-9 at 7:52–8:17; 8:50–9:04; 9:09–26.)

It is well-established that an officer making a valid arrest "has the right to use some degree of physical force to effectuate the arrest," but the use of force must be reasonable. *Stainback*, 569 F.3d at 772 (citing *Graham*, 490 U.S. at 396). In the context of handcuffing an arrestee, the Seventh Circuit emphasizes that a key consideration is whether the officer knows that handcuffing will unnecessarily harm the arrestee, especially where he presents little or no threat of injury or flight risk. *Id.*; *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014). Typically, the issue is whether the officer knew of the injury; "a reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made known to him." *Stainback*, 569 F.3d at 773; *see also Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (concluding that a plaintiff who simply complained the handcuffs were too tight did not have an excessive force claim).

The record would support findings that Reyes-Castillo had a preexisting injury, was in pain from the handcuffing, and the Defendant Officers were aware of the injury and pain, only to then refuse to make the accommodation measures that Reyes-Castillo requested. The question remains, however, whether the Defendant Officers' response and force used was unreasonable. The record confirms that they made some accommodation for his injury, just not the accommodation he requested, and a civilian is not entitled to dictate to the officers how they can treat him during an arrest. Defendants correctly assert that "[t]here is absolutely no requirement that law enforcement must kowtow to every wish of an arrestee or believe the arrestee at face value." (ECF No. 42 at 4.) Accordingly, under *Stainback*, the dispositive issue is whether the Defendant Officers, once alerted to Reyes-Castillo's preexisting injury, "consider[ed] that information, together with the other relevant circumstances," in determining how to handcuff him. 569 F.3d at 773. Under *Howell*, they could appropriately refuse requested accommodations, but only after considering the injury and weighing the accommodations against the danger of the crime and the risk to the arresting officer and the public at large. *See* 853 F.3d at 899–900.

From the record, including the video evidence, a reasonable jury could find that the Defendant Officers did not act reasonably. The record shows that Reyes-Castillo was cooperating and did not appear to be a significant danger to the public at large or to the arresting officers. Indeed, the basis for the arrest did not involve significant violence; it related to a text message forwarding a Netflix password. Nor does the record definitively show there was no alternative way to safely handcuff him while reducing the risk of injury to his shoulder. To the contrary, the only contemporaneous reason given for handcuffing him behind the back was police department policy. But police department policy cannot override the constitutional requirement that officers consider the facts at hand. Further, the record shows that City policy was to follow the DAAT Manual, which specifically provided for the possibility that a suspect be handcuffed in front if there was a clear medical reason to do so. (ECF No. 41 ¶¶25–26.) But the Defendant Officers appear to have relied on a misunderstanding of that policy and concluded they could not *in any circumstances* handcuff Reyes-Castillo in front of his body. In this context, a jury might find that the Defendant Officers acted reasonably, but they might also find the Defendant Officers' actions were unreasonable and violated Reyes-Castillo's Fourth Amendment rights. Accordingly, Defendants are not entitled to summary judgment on this claim.

**II.      Qualified Immunity Precludes Recovery Against the Defendant Officers.**

The Defendant Officers are on better footing in arguing that they are entitled to qualified immunity. (ECF No. 27 at 11–13.) "A public official is entitled to qualified immunity from suit unless he violated a clearly established constitutional right." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "Qualified-immunity analysis usually entails a two-step inquiry: we ask (1) whether the facts alleged or shown by the plaintiff establish a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232, (2009)). In answering the first question, the Court must construe contested facts in Reyes-Castillo's favor. *See Sears*, 233 F.3d at 437; *Hoeppner v. Billeb*, No. 17-cv-430-bbc, 2018 WL 5282898, at *11 (W.D. Wis. Oct. 24, 2018) ("[E]ven qualified immunity does not change the rule that facts must be construed in favor of the nonmoving party on a motion for summary judgment." (citing *Board v. Farnham*, 394 F.3d 469, 476 (7th Cir. 2005))). As discussed above, a reasonable jury could determine that Reyes-Castillo's rights were violated; therefore, the Court proceeds to the second step of this inquiry.

"To show that a right is clearly established, the plaintiff must demonstrate that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Dockery*, 911 F.3d at 466 (quoting *al-Kidd*, 563 U.S. at 741). "Qualified immunity cannot be defeated simply by 'alleging [a] violation of extremely abstract rights.'" *Id.* (alteration in original) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "[T]o place the constitutional question beyond debate, the precedent must be 'particularized to the facts of the case.'" *Id.* (quoting *Pauly*, 580 U.S. at 79). "A plaintiff may also overcome an officer's qualified immunity by showing that the conduct in question is 'so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully.'" *Id.* at 466–67 (quoting *Abbott v. Sangamon County*, 705 F.3d 706, 723–24 (7th Cir. 2013)).

"It is difficult in borderline cases to say that a right to be free from a particular degree of force was 'clearly established.'" *Rooni v. Biser*, 742 F.3d 737, 743 (7th Cir. 2014). While there is significant precedent regarding handcuffing and excessive force, none of those cases involve a substantially similar factual scenario. *See Howell*, 853 F.3d at 900 (7th Cir. 2017) (holding that, if an arresting officer considers the information about an arrestee's injury and weighs it against the crime and the circumstances of arrest, there is no excessive force claim); *Rabin v. Flynn*, 725 F.3d

628, 636 (7th Cir. 2013) (holding that knowing of a preexisting injury and refusing to consider any accommodation to handcuffing could be excessive force); *Stainback*, 569 F.3d at 772 (holding that an arresting officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury); *Tibbs*, 469 F.3d at 666 (holding that simply complaining of discomfort without further elaborating injury is not a sufficient excessive force claim); *Payne*, 337 F.3d at 774–75, 780–81 (concluding that refusal to loosen handcuffs when plaintiff complained of numbness was excessive force); *Herzog v. Village of Winnetka*, 309 F.3d 1041 (7th Cir. 2002) (concluding that shoving the plaintiff to the ground, cracking her tooth with a forced breath-screening device, waiting over an hour to loosen too-tight handcuffs was excessive force); *Lester v. City of Chicago*, 830 F.3d 706, 714 (7th Cir. 1987) (concluding that a reasonable jury could find that excessive force was used if it believed plaintiff did not resist arrest and the officers threatened to punch her, kneed her in the back, dragged her down the hallway, and handcuffed her so tightly her wrists bruised).

The Defendant Officers argue they did not violate clearly established law. They insist that they followed existing law by considering Reyes-Castillo's limited range of motion and then appropriately providing him with an accommodation to traditional handcuffing. (ECF No. 27 at 13.) Reyes-Castillo responds that the Seventh Circuit caselaw is clear that, if an officer knows of a preexisting injury that may be further aggravated from the arrest, the officer is obligated to consider alternative methods to traditional handcuffing. (ECF No. 34 at 20.) The Defendant Officers retort that the case law is not as clear as Reyes-Castillo suggests, entitling them to qualified immunity. (ECF No. 42 at 7.)

The Defendant Officers correctly identify this case as one that is at the outer bounds of clear Seventh Circuit precedent. It is undisputed that the Defendant Officers did provide Reyes-Castillo with some accommodation, using three sets of handcuffs linked behind his back. Reyes-Castillo insists, however, that this accommodation was insufficient and that the Defendant Officers were required to consider further accommodations given the severity of his shoulder injury and pain. Seventh Circuit caselaw has not directly addressed this scenario, although the Court of Appeals' teaching confirms that the Defendant Officers were required to consider reasonable accommodations once alerted to Reyes-Castillo's condition. *See Howell*, 853 F.3d at 900. Defendant Officers' flat reliance on an apparent misreading of City policy may have violated Reyes-Castillo's rights. Under existing caselaw, however, while Reyes-Castillo may have been constitutionally entitled to further accommodations, or at least the consideration of them, "there

was nothing that would have alerted [the Defendant Officers] to the fact that a constitutional violation was looming." *See Rooni*, 742 F.3d at 743. The Court therefore concludes that qualified immunity applies with respect to Reyes-Castillo's claims against the Defendant Officers.

### III. Reyes-Castillo Has Sufficient Evidence for a Jury to Find the City of Brookfield Liable.

In *Monell v. Department of Social Services*, the Supreme Court recognized that municipalities could be "persons" and thus held liable for constitutional violations under Section 1983. 436 U.S. at 690–91. To prevail on a *Monell* claim, the plaintiff must establish (1) that he suffered a constitutional injury, and (2) that the City authorized or maintained a custom of approving the unconstitutional conduct. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (citing *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994)). As discussed above, the Court has already concluded that a reasonable jury could find a constitutional violation; therefore, the issue at summary judgment is whether a City custom or policy resulted in the violation.

*Monell* identified three circumstances in which a municipality could be legally responsible for a constitutional violation. First, a plaintiff can establish municipal liability by showing unconstitutional conduct that implements or executes an official policy adopted by the entity's officers. *Monell*, 436 U.S. at 690; *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) (citing *Los Angeles County v. Humphries*, 562 U.S. 29, 35 (2010)). Second, the plaintiff can show that the unconstitutional action was done pursuant to a municipal custom—even one that is not formally codified. *Monell*, 436 U.S. at 690–91; *see also Glisson*, 849 F.3d at 379. Third, a plaintiff may prove that a municipal actor with final decision-making authority within the entity adopted the relevant policy or custom. *See Monell*, 436 U.S. at 694; *Glisson*, 849 F.3d at 379.

Reyes-Castillo contends that, while the City had formally adopted a policy of following the DAAT Manual, which included a directive that officers consider medical necessity when handcuffing an arrestee, the City's officers and sergeants were in fact trained to handcuff behind the back *without exception*. (*See* ECF No. 34 at 23–25.) Thus, while the City's official policy may have technically complied with the Fourth Amendment, it adopted a custom through training that contradicted that policy in practice. Reyes-Castillo thus argues that the City failed to properly train its officers. (*Id.* at 29–30.) The City responds that, regardless of what the officers say they knew or did not know, its implementation of DAAT combined with the accommodation given to Reyes-Castillo is enough to escape *Monell* liability. (*See* ECF No. 42 at 9–11.) It further argues

that Reyes-Castillo's *Monell* claim fails because he has not produced evidence of other arrestees suffering the same or similar constitutional violations. (*Id.*)

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of [Section] 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But the failure "must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "[A] city may be deemed deliberately indifferent if . . . policymakers choose to retain [a training] program" "when [they] are on actual or constructive notice that a particular omission in [the] program causes city employees to violate citizens' constitutional rights." *Id.* (citing *Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 407 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (citing *Brown*, 520 U.S. at 409). The path to prove failure to-train liability requires the application of "rigorous standards of culpability and causation" to ensure the municipality is not being held liable solely for the actions of its employee. *J.K.J v. Polk County*, 960 F.3d 360, 378 (7th Cir. 2020) (quoting *Brown*, 520 U.S. at 405). However, this is not an insurmountable standard; to survive summary judgment, the question is if the evidence presented is legally sufficient to support a verdict against the City. *See id.*

As an initial matter, the City is incorrect that Reyes-Castillo must show other instances of improper handcuffing to prevail on his *Monell* claim. Unlike other *Monell* theories, a failure-to-train claim "does not require proof of widespread constitutional violations before that failure becomes actionable; a single violation can suffice where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021). In other words, municipalities do not receive "one-free-bite." *Id.* at 734. When, "in the absence of training, there is no way for novice officers to obtain the legal knowledge they require," there may be failure-to-train liability. *Connick*, 563 U.S. at 64.

The Court also notes that although the case against the Defendant Officers will be dismissed on qualified immunity grounds, this ruling does not mean that the City escapes liability. A municipality may be held liable, even if its officers are not, unless such a finding creates inconsistent results. *See Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2010). If a jury could find that Defendant Officers did not adequately respond to Reyes-Castillo's request

for handcuffing accommodations *because of* the City's failure to properly train its officers, then the City may be held liable. *See id.*

The City maintains that it adopted the DAAT, which requires consideration of accommodations to handcuffing behind the back for medical necessity, and "the policy is what the policy is." (ECF No. 42 at 10.) But the record also contains evidence that: (1) Officer Strickland was trained to keep arrestees hands behind their back *even when there are specific complaints of pain*; (2) Officer Pipp was similarly trained to *always* restrain an arrestee's hands behind their back; (3) Officer Pipp *never* received training for accommodating physical injuries during handcuffing; (4) Sergeant Grochowski testified that Brookfield officers have *no discretion* on whether or not to restrain an arrestee; and (5) Sergeant Morales was *unaware of any training, policies, or procedures* regarding accommodations for individuals who could not be traditionally handcuffed. (*See* ECF No. 43 ¶¶71, 74, 75, 77, 81.)

While the City's official policy of following the DAAT appears constitutional because it encourages officers to consider accommodations to handcuffing behind the back in the face of medical necessity, Reyes-Castillo has come forward with sufficient evidence for a jury to conclude that none of the City's officers or sergeants were aware of this official policy. It cannot be the case that adopting a constitutional policy necessarily wipes out liability when a city has simultaneously adopted an unconstitutional custom. Such a holding would, first, create a gaping loophole in *Monell* liability and, second, ignore that *Monell* allows for liability on customs that are *not* codified. *Monell*, 436 U.S. at 690–91. Seventh Circuit precedent confirms that, if an officer is aware of a physical limitation that may require a handcuffing accommodation, he or she must consider whether such an accommodation is safe to give. *Howell*, 853 F.3d at 900. A jury could reasonably find that the City had a custom of failing to train its officers on the necessary considerations for handcuffing accommodations in the light of Seventh Circuit precedent, which presented a "recurring, obvious risk" and amounted to deliberate indifference, regardless of the City's official policy. Therefore, the City's motion for summary judgment on Reyes-Castillo's *Monell* claim is denied.

## CONCLUSION

For the foregoing reasons,

**IT IS FURTHER ORDERED** that Defendants' motion for partial summary judgment, ECF No. 26, is **GRANTED in part** and **DENIED in part**. It is granted with respect to Plaintiffs'

excessive force claim against the Officers under the doctrine of qualified immunity. It is denied as to all other respects.

Dated at Milwaukee, Wisconsin on October 15, 2024.

                                                s/ *Brett H. Ludwig*
                                                BRETT H. LUDWIG
                                                United States District Judge